CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUL 19 2011

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHRISTOPHER J. GREEN, | ) |
| Petitioner, | ) Civil Action No. 7:11CV00146 |
| v. | ) **MEMORANDUM OPINION** |
| DIRECTOR, VIRGINIA DEPT. OF CORRECTIONS, | ) By: Hon. Glen E. Conrad<br>) Chief United States District Judge |
| Respondent. | ) |

In February of 2006, Christopher J. Green was convicted of felony murder and use of a firearm during the commission of murder, following a bench trial in the Circuit Court of Albemarle County. The Circuit Court sentenced Green to a total term of imprisonment of 33 years with 16 years suspended. After having failed to obtain relief on direct appeal or in state post-convictions proceedings, Green has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition is presently before the court on the respondent's motion to dismiss. For the reasons set forth below, the court will grant the respondent's motion.

### Factual Background

On January 26, 2005, Ashley Toney, a 19-year-old woman from Buckingham County, traveled to Charlottesville with a group of friends to celebrate a friend's birthday. In the early morning hours of January 27, 2005, after visiting a local bar and restaurant, the group returned to an apartment complex in Albemarle County, where some of Toney's friends shared an apartment.

A short time later, Christopher Green and Phillip Green arrived at the complex, and an argument ensued in the parking lot between the two men and the group from Buckingham County. After Phillip Green and Toney's friend, Shaneika Nicholson, exchanged words, Toney

"pushed [Phillip Green] and told him to not fool with [Nicholson]." (Trial Tr. at 204).

As Toney and Nicholson walked away, Christopher Green reached into his pants pocket. Moments later, witnesses heard gunshots. Toney was struck by one of the bullets and fell to the ground. She died from a gunshot wound to her chest.

At trial, Nicholson testified that she saw Christopher Green holding a gun after the shots were fired. Likewise, Toney's younger sister, who witnessed the incident from an apartment window, testified that she heard gunshots and that she saw sparks coming from Christopher Green's hand. After the shooting, Christopher Green fled the scene, while Phillip Green remained.

Steven Fields, Christopher Green's brother-in-law, testified that on the night in question, the petitioner arrived at his house and gave him a gun. Fields indicated that Christopher Green appeared intoxicated and very upset. Green told Fields that "he thought he had messed up," that "he was pretty sure that someone had been shot," and that "he thought possibly [he] had done it." (Trial Tr. at 291, 293). Investigators later found a bullet in Christopher Green's bedroom, which was of the same type used in the shooting.

## Procedural History

Christopher Green was indicted by a grand jury in Albemarle County on May 23, 2005. The grand jury charged that the petitioner, "[o]n or about the 27th day of January, 2005, did kill Ashley Toney, accidentally in the prosecution of a felonious act to wit: malicious wounding or attempted malicious wounding, in violation of § 18.2-33" of the Virginia Code. The grand jury also charged the petitioner with using firearm during the commission of murder, in violation of Virginia Code § 18.2-53.1.

2

A two-day bench trial began on February 21, 2006. The Circuit Court ultimately convicted Green of both offenses. To summarize its decision, the Court stated as follows:

> [H]aving exhaustively gone through the evidence in evaluating everything in the record, the Court does find that the evidence proves beyond a reasonable doubt that the defendant fired the three shots in question on the night or early morning hours when this incident occurred. The shots were fired directly at people who were in front of him, there was no heat of passion as that term is defined under Virginia law that would justify or that would mitigate the shooting itself. In my view, firing a loaded weapon at close range at three people or excuse me, three times at various people is certainly evidence of malice, particularly when one considers it's with the use of a deadly weapon. It is a felonious act and as a result of the felonious act, the victim in this case was tragically but accidentally killed as a result. And in my view, based on all the evidence, there is no reasonable doubt and the Court does find the defendant guilty then of both offenses.

(Trial Tr. at 448-449). The Court subsequently sentenced Green to a total term of imprisonment of 33 years with 16 years suspended.

Green thereafter appealed to the Court of Appeals of Virginia. In his petition for appeal, Green challenged the sufficiency of the evidence to support his convictions. The petition was denied on July 5, 2007. Green then filed a petition for appeal in the Supreme Court of Virginia. The petition was refused by order entered December 17, 2007.

On December 15, 2008, Green filed a petition for writ of habeas corpus in the Circuit Court of Albemarle County, in which he raised the following claim:

> Petitioner was denied effective assistance of counsel when trial counsel failed to introduce available evidence that would have demonstrated that petitioner acted either in self defense or in the "heat of passion." Either showing would have negated the showing of malice necessary to convict petitioner of felony homicide and would have negated his conviction for the use of a firearm in the commission of murder.

The Circuit Court dismissed the petition on March 16, 2009. Green's subsequent appeal was

3

refused by the Supreme Court of Virginia on November 17, 2010.

On January 4, 2011, Green filed the instant petition pursuant to 28 U.S.C. § 2254. The petition asserts the following claims:

> A. The evidence adduced at trial was insufficient to sustain a conviction for felony homicide and use of a firearm during the commission of a felony.
>
> B. Trial counsel was ineffective in that:
>
>> 1. Counsel failed to present available exculpatory evidence that would have demonstrated that petitioner acted under the "heat of passion"; and
>>
>> 2. Counsel failed to present a defense of "imperfect self-defense" based on the same exculpatory evidence.

On May 2, 2011, the respondent moved to dismiss the petition. The respondent's motion is now ripe for review.

## Standards of Review

A federal petitioner challenging a state conviction or sentence generally must exhaust remedies available in the state in which he was convicted before seeking federal habeas relief. 28 U.S.C. § 2254(b). To properly exhaust state remedies, the petitioner must fairly present the substance of his claims to the state's highest court. See Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997). The purpose of this requirement is "to give the State the initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Picard v. Connor, 404 U.S. 270, 275 (1971) (internal citation and quotation marks omitted).

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998). This doctrine provides that "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for

4

the dismissal, the habeas petitioner has procedurally defaulted his federal habeas claim." Id. (citing Coleman v. Thompson, 501 U.S. 722, 731-732 (1991). Procedural default also occurs "when a habeas petitioner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" Id. (quoting Coleman, 501 U.S. at 735 n.1). This court cannot review the merits of a procedurally defaulted claim absent a showing of cause and prejudice or a fundamental miscarriage of justice. See Harris v. Reed, 489 U.S. 255, 262 (1989).

When a claim has been adjudicated on the merits in state court, a federal court owes considerable deference to the state court's decision with respect to that claim. Pursuant to § 2254(d), this court may grant habeas relief on a claim that was adjudicated on the merits in state court only if the state court's adjudication of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

## Discussion

I. **Claim A**

In claim A, Green alleges that the evidence was insufficient to support his convictions, because there was conflicting testimony as to who fired the weapon that killed Ashley Toney. Green further argues that his confession to his brother-in-law was not credible because he was intoxicated and confused.

5

Green raised the same claim on direct appeal. Upon reviewing the evidence presented by the Commonwealth, the Court of Appeals held that "[t]he Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that [Green] was guilty of use of a firearm and felony murder." (July 5, 2007 Op. at 2). For the following reasons, the court concludes that the Court of Appeals' decision is entitled to deference under 28 U.S.C. § 2254(d).

When reviewing the sufficiency of the evidence to support a conviction, the critical inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The court must consider circumstantial as well as direct evidence, and allow the prosecution the benefit of all reasonable inferences. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). The court does not weigh the evidence or review the credibility of witnesses. United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989).

Applying these principles, the court concludes that a rational trier of fact could have found the petitioner guilty of felony murder and use of a firearm during the commission of murder. As the Court of Appeals summarized in its opinion, the evidence presented at trial, when reviewed in the light most favorable to the Commonwealth, proved as follows:

> Ashley Toney spent the evening with several friends eventually arriving at an apartment complex. A short time later, [the petitioner] and Phillip Green also arrived at the complex. [Phillip] Green and Toney's friend, Shaneika Nicholson, began arguing. Toney pushed Green and insisted that he stop bothering Nicholson. As Toney walked away from Green, [the petitioner] stepped back and reached into his pants pocket. Moments later, witnesses heard gunshots. Toney was struck by a bullet and fell to the ground. Toney died from the gunshot wound.

6

> Nicholson testified that upon hearing the gunshots, she turned and saw [the petitioner] with a gun. Toney's sister testified that she saw a flash of fire coming from [the petitioner's] hand. After the shooting, [the petitioner] fled the scene while [Phillip] Green remained.
>
> Steven Fields, [the petitioner's] brother-in-law, testified [the petitioner] arrived at his house that night and gave him a gun. Fields explained [the petitioner] appeared upset and intoxicated. [The petitioner] told Fields that he had "messed up" and "may have" shot someone.
>
> Police later found a bullet in [the petitioner's] bedroom which was of the same type used in the shooting.

(July 5, 2007 Op. at 1-2).

When viewed in the light most favorable to the Commonwealth, the court concludes that the Commonwealth presented sufficient evidence to prove that Christopher Green fired the gun that resulted in Ashley Toney's death. As the Court of Appeals emphasized in its opinion, Shaneika Nicholson's testimony that she saw Christopher Green holding the gun immediately after the shots were fired was corroborated by the testimony of other witnesses, as well as the petitioner's own statements to his brother-in-law following the incident. While the petitioner presented witnesses who testified that it was Phillip Green who was holding the gun at the time it was fired, the Circuit Court rejected the petitioner's evidence and instead believed the Commonwealth's witnesses. The Circuit Court's credibility determination may not be reevaluated by this court on federal habeas review. See Wright v. West, 505 U.S. 277, 296 (1992) ("In Jackson, we emphasized repeatedly the deference owed to the trier of fact and, correspondingly, the sharply limited nature of constitutional sufficiency review. We said that 'all of the evidence is to be considered in the light most favorable to the prosecution'; that the prosecution need not affirmatively 'rule out every hypothesis except that of guilt'; and that a

7

reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'") (quoting Jackson, 443 U.S. at 319, 326).

In sum, the court concludes that a rational trier of fact could have found the petitioner guilty beyond a reasonable doubt of both offenses, and that the Court of Appeals' decision to reject the petitioner's challenge to the sufficiency of the evidence did not involve an unreasonable application of clearly established federal law or an unreasonable determination of the facts. Accordingly, claim A must be dismissed.

## II. Claim B(1)

In Claim B(1), Green alleges that trial counsel was ineffective in failing to elicit additional testimony from Tremaine Turner, who told police that he had choked Green prior to the shooting. Green contends that if counsel had elicited such testimony from Turner, the trial court would have found that Green acted in the "heat of passion," and that this would have negated the finding that Green acted with the malice necessary to sustain his conviction for felony murder.

Green raised the same claim in his state habeas petition. The state habeas court held that the claim failed to satisfy the two-part test for ineffective assistance enunciated in Strickland v. Washington, 466 U.S. 668 (1984). For the following reasons, the court concludes that the state habeas court's decision is entitled to deference under § 2254(d).

To succeed on a claim of ineffective assistance, a petitioner must establish that counsel's performance was "deficient." Strickland, 466 U.S. at 687. "This requires showing that counsel

made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. The petitioner must also show that counsel's deficient performance prejudiced his defense. Id. To demonstrate prejudice, the petitioner generally "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id.

Based on the court's independent review of the record, the court concludes that Green has failed to satisfy either element of the Strickland test. Green has not provided an affidavit from Tremaine Turner indicating that Turner would have testified as Green now claims. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) (holding that "an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced"). Instead, Green relies on trial counsel's notes of police reports relating to statements made by Turner. Those notes, however, are not favorable to Green. To the contrary, the notes indicate that Turner claimed that Green hit him in the eye before he grabbed Green by the neck and, thus, that Green provoked the fight between the two men. The notes also indicate that Turner was running away when the shots were fired. For these reasons, Green's attorney believed that any additional testimony from Turner would be "damaging" to his client's case, since it would make "Green out to be the aggressor." (Ex. 3 to Respondent's Mot. to Dismiss the State Habeas Petition). Because evidence that Green was the aggressor would not support the argument that he acted in the "heat of passion," Green has failed to establish that his attorney's performance was deficient or that it prejudiced his defense. See Wilkins v. Commonwealth, 11 S.E.2d 653, 654 (Va. 1940) ("A homicide committed in hot blood, <u>growing solely out of the combat for which a defendant was not responsible</u>, is not murder.") (emphasis

9

added). Accordingly, claim B(1) must be dismissed.

### III. Claim B(2)

In claim B(2), Green alleges that his trial counsel was ineffective in failing to present an available defense of "imperfect self-defense." To support this claim, Green cites to the Supreme Court of Virginia's decision in Hash v. Commonwealth, 13 S.E. 398 (Va. 1891), in which the Court stated that "although the slayer provoked the combat, or produced the occasion, yet, if it was done without any felonious intent, the party may avail himself of the plea of self-defense." Hash, 13 S.E. at 406. Green argues that if trial counsel had properly presented this defense, there is a reasonable probability that the trial court would have found him guilty of voluntary manslaughter rather than felony murder.

Having reviewed the record, the court agrees with the respondent that this claim was not fairly presented in state court, and that it is procedurally defaulted. Green did not raise this claim in his state habeas petition and, thus, did not properly exhaust the claim as required under 28 U.S.C. § 2254(b).* If Green now attempted to present the claim in a state habeas petition, the claim would be barred by Virginia Code § 8.01-654(B)(2), which generally prohibits successive petitions. The United States Court of Appeals for the Fourth Circuit has recognized that the procedural rule set forth in Virginia Code § 8.01-654(B)(2) provides an adequate and

---

* Green concedes that he mentioned this claim for the first time in a reply brief that was filed in response to the motion to dismiss his state habeas petition. Because Green did not request or obtain leave to amend his state habeas petition to include this new claim, it was not properly presented in state court. See Mallory v. Smith, 27 F.3d 991, 995 (4th Cir. 1994) (holding that because the state court never granted leave to amend the petition to add a new claim, the claim was not properly presented in state court for purposes of § 2254). Similarly, to the extent that Green attempted to present this claim to the Supreme Court of Virginia in his habeas appeal, without having presented it in his state habeas petition, Green did not properly exhaust his state remedies. See Castille v. Peoples, 489 U.S. 346, 351 (1989) (holding that raising a claim for the first time in a procedural context where consideration of the merits is discretionary does not satisfy the federal exhaustion requirement).

independent ground for the denial of federal habeas relief. Fisher v. Angelone, 163 F.3d 835, 851-852 (4th Cir. 1998). Because Green has failed to establish cause and prejudice or a fundamental miscarriage of justice to excuse the procedural default, the court is precluded from reviewing the merits of this claim. Id. at 852.

In any event, the court notes that even if this claim was not procedurally defaulted, Green would not be entitled to federal habeas relief. Under Virginia law, the doctrine of imperfect self-defense is not a complete defense. As the Court of Appeals of Virginia explained in Connell v. Commonwealth, 542 S.E.2d 49 (Va. App. Ct. 2001):

> If we interpret the discussion of 'imperfect defense' in Hash for the proposition that one can provoke a confrontation and still avail himself or herself of the defense of justifiable homicide, such holding was overruled by Jackson v. Commonwealth, 98 Va. 845, 36 S.E. 487 (1900). However, if we interpret Hash to hold that one may avail himself or herself of "imperfect defense" if he or she provoked an attack without felonious intent, such holding merely is the law of voluntary manslaughter as it currently stands in Virginia.

Connell, 542 S.E.2d at 54 (holding that the trial court did not err in denying the appellant's proffered jury instruction on imperfect self-defense, and emphasizing that the trial court instructed the jury on voluntary manslaughter, heat of passion, and the distinction between murder and manslaughter).

In this case, the trial court specifically rejected Green's heat of passion argument and found that he acted with malice. Green has failed to show that there is a reasonable probability that the trial court's decision would have been different if his attorney had elicited additional testimony from Tremaine Turner or otherwise invoked the doctrine of imperfect self-defense. As previously stated, Turner's statements to investigators revealed that Green provoked a fight between the two men, and that Turner was running away when the shots were fired. Under these

11

circumstances, the court is convinced that Green's imperfect self-defense claim is without merit under Strickland and, thus, that claim B(2) must be dismissed.

## Conclusion

For the reasons stated, the court will grant the respondent's motion to dismiss. Additionally, because the petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right," the court will deny a certificate of appealability. See 28 U.S.C. § 2253(c).

The Clerk is directed to send certified copies of this opinion and the accompanying order to the petitioner and counsel of record for respondent.

ENTER: This 19th day of July, 2011.

*[signature]*
Chief United States District Judge